UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

MELVIN D. TUNSTALL,

Plaintiff,

v. Case No. 26-cv-1216-bhl

PATRICK MITCHELL et al.,

Defendants.

---

**SCREENING ORDER**

---

Plaintiff Melvin D. Tunstall, who is currently incarcerated at the Milwaukee County Jail and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that his civil rights were violated. This matter comes before the Court on Tunstall's motion for leave to proceed without prepaying the full filing fee and to screen the complaint.

**MOTION TO PROCEED WITHOUT PREPAYING THE FILING FEE**

Tunstall has requested leave to proceed without prepaying the full filing fee (*in forma pauperis*). A prisoner plaintiff proceeding *in forma pauperis* is required to pay the full amount of the $350.00 filing fee over time. *See* 28 U.S.C. §1915(b)(1). As required under 28 U.S.C. §1915(a)(2), Tunstall has filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his complaint and has been assessed and paid an initial partial filing fee of $33.00. Tunstall's motion for leave to proceed without prepaying the filing fee will be granted.

**SCREENING OF THE COMPLAINT**

The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity and must dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short

and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555 (internal quotations omitted).

**ALLEGATIONS OF THE COMPLAINT**

According to Tunstall, he was arrested at a hotel without incident by West Allis police officers on March 23, 2025. Tunstall states that as he was being escorted through the hallway, an officer scraped his face against the wall, removing the skin under his eye. Tunstall asserts that he became agitated and expressed his frustration to the officers, who squeezed his arms, twisted his wrists, and lifted his arms up behind his back. Once in the parking lot, one of the officers allegedly informed Defendant Sergeant Ryan Stuettgen that Tunstall was not cooperating. Sergeant Stuettgen then allegedly stated that Tunstall was resisting and Tunstall responded by repeatedly denying that he was resisting. Tunstall claims that an officer then lifted him up and slammed him on the ground, knocking the wind out of him and causing injuries to his shoulder and the right side of his forehead. Tunstall claims that he was placed in body restraints that cut off blood circulation to his legs and that an officer tried to place a helmet on him, hurting his head and neck. Tunstall cried out in pain after his handcuffs were hooked to the door, but officers ignored him. He also asserts that Sergeant Stuettgen placed a thick mask on him, after which he blacked out because he could not breathe.

Tunstall was transported to a hospital, but officers falsely stated that he was refusing medical attention. Officers then transported him to the jail. Tunstall asserts that an officer refused

to loosen his handcuffs even though he stated they were cutting off circulation to his hands. According to Tunstall, after an officer checked on him, he made the handcuffs even tighter. Tunstall asserts that he started to use explicit language toward the officer, who left Tunstall sitting like that for about half an hour.

## THE COURT'S ANALYSIS

Tunstall alleges that excessive force was used just after he was arrested. His claim therefore falls under the Fourth Amendment, which guarantees citizens the right "to be secure in their persons . . . against unreasonable . . . seizures" of the person. *Graham v. Connor*, 490 U.S. 386, 394 (1989); *see Tennessee v. Garner*, 471 U.S. 1, 7–8 (1985) (claim of excessive force to effect arrest analyzed under a Fourth Amendment standard). Under the Fourth Amendment, the Court applies an objective reasonableness test, considering the reasonableness of the force based on the events confronting the officer at the time and not on his subjective beliefs or motivations. *See Horton v. Pobjecky*, 883 F.3d 941, 949–50 (7th Cir. 2018) (citing *Graham*, 490 U.S at 396–97). This test carefully balances "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id*. at 949 (quoting *Graham*, 490 U.S at 396).

Tunstall states a claim against Sergeant Stuettgen based on allegations that he either facilitated, approved, condoned, or turned a blind eye to the unreasonable force allegedly used by officers following Tunstall's arrest. *See Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir.1988).

Tunstall does not, however, state a claim against Officers Caleb Hoff, Connor Sandvick, Connor Laquinta, or Joshua Schenk. Although Tunstall includes them in the "Defendants" section of his complaint and identifies them as West Allis police officers, he does not allege how each officer was involved in the alleged incident, when Tunstall interacted with each officer, or what each officer did or did not do to violate his rights. There is no vicarious liability under §1983, so the mere fact that one or more of the officers may have been present at his arrest, the hospital, or police station (and Tunstall does not even allege this much) is insufficient for the Court to reasonably infer they all violated his rights as he asserts. If Tunstall believes he can allege what a particular officer did or did not do, he may file an amended complaint that includes sufficient information for the Court to reasonably infer that a particular officer violated Tunstall's rights. Tunstall may need to obtain information in discovery before he is able to prepare an amended complaint that satisfies the notice requirements of Fed. R. Civ. P. 8.

Tunstall also does not state a claim against Chief Patrick Mitchell. Tunstall alleges that Chief Mitchell "is responsible for the subordinates under his supervision." But the doctrine of respondeat superior cannot be used to hold a supervisor liable for the misconduct of a subordinate. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). Unlike Sergeant Stuettgen who allegedly was present during Tunstall's arrest and interacted with the officers conducting the arrest, it does not appear that Chief Mitchell had any involvement in the alleged incident. The mere fact that Chief Mitchell is a supervisor is an insufficient basis for liability under §1983.

**IT IS THEREFORE ORDERED** that Tunstall's motion for leave to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that Tunstall fails to state a claim against Patrick Mitchell, Calen Hoff, Connor Sandvick, Connor Laquinta, and Joshua Schenk, so the clerk's office is directed to terminate them from this action.

**IT IS FURTHER ORDERED** that the United States Marshal shall serve a copy of the complaint and this order upon Defendant Ryan Stuettgen pursuant to Federal Rule of Civil Procedure 4. Tunstall is advised that Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2)–(3). Although Congress requires the Court to order service by the U.S. Marshals Service precisely because *in forma pauperis* plaintiffs are indigent, it has not made any provision for these fees to be waived either by the Court or by the U.S. Marshals Service. The Court is not involved in the collection of the fee.

**IT IS FURTHER ORDERED** that Ryan Stuettgen shall respond to the complaint.

**IT IS FURTHER ORDERED** that copies of this order be sent to the Office of the Sheriff, Fiscal Operations Rm 224, 821 W State Street, Milwaukee, WI 53233.

**IT IS FURTHER ORDERED** that the agency having custody of Tunstall shall collect from his institution trust account the $317.00 balance of the filing fee by collecting monthly payments from Tunstall's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If Tunstall is transferred to another institution, the transferring institution shall forward a copy of this Order along with Tunstall's remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the Court enters a scheduling order setting deadlines for discovery and dispositive motions.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the Court to the following address:

Office of the Clerk
United States District Court
Eastern District of Wisconsin
362 United States Courthouse
517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

Tunstall is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Enclosed is a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that Tunstall may find useful in prosecuting this case.

Dated at Milwaukee, Wisconsin this 29th day of September, 2026.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge